■ DENNIS SPRING, Respondent, v ADRIENNE S. GLAWON, Appellant. — In a divorce action, defendant wife appeals, as limited by her brief, from so much of an order of the Supreme Court, Richmond County (Goldberg, J.), dated March 22, 1982, as granted plaintiff's application to enforce a divorce decree incorporating a stipulation to the effect that the parties' "child shall have no religious upbringing without the express written permission of both parties", and ordered the defendant to remove the child from parochial school and enroll him in either a public or nonsectarian private school. Order affirmed insofar as appealed from, without costs or disbursements. Plaintiff, who is Jewish, and defendant, who is Catholic, were married on November 21, 1968. Their son, Evan, the sole issue of the marriage, was born on June 27, 1975. On October 14, 1976, just over 15 months after Evan's birth, plaintiff obtained a judgment of divorce based upon abandonment. Pursuant to a stipulation between the parties, which was incorporated but not merged into the judgment, defendant was awarded custody of Evan, subject to certain rights of plaintiff. In addition to visitation, the stipulation (as set forth in the judgment) provided that "[i]t is agreed that this child [Evan] shall have no religious upbringing without the express written permission of both parties". Subsequently, in September, 1981, Evan reached school age and defendant, over plaintiff's objection, enrolled him in St. Joseph's Hill Academy (St. Joseph's), a Roman Catholic parochial school. The school is located one block from where defendant resides with her present husband. Although during her marriage to plaintiff neither of them practiced any religion, defendant's present husband is of the Catholic faith and she has apparently resumed the practice of that religion. In December, 1981 plaintiff made the instant motion seeking both enforcement of the provision of the stipulation regarding Evan's religious upbringing as well as modification of custody to provide for joint custody (plaintiff has not appealed from either Special Term's denial of this latter portion of his motion or from its grant of certain incidental relief to defendant on her cross motion). In opposition, defendant contended that, notwithstanding the stipulation, it is in Evan's best interest to attend St. Joseph's. In support of her position she submitted a comparison of reading scores at both St. Joseph's and the local public elemen-

tary school, together with her personal experiences over the past 13 years as a public school teacher on Staten Island. Special Term, in ordering that defendant immediately remove Evan from St. Joseph's and enroll him in either a public school or a nonsectarian private school, held that: "where the parents, by agreement, have imposed reasonable restraints upon the custodial parent in the upbringing of the child, those restraints will be enforced unless it can be demonstrated, by the parent seeking modification, that enforcement would not be in the best interest of the child." We agree. As a matter of policy, the initial posture of the courts with respect to the religious upbringing of a child should be one of noninterference (*Matter of Paolella v Phillips,* 27 Misc 2d 763). The determination of that matter is best left to the child, if of sufficient age and intelligence, agreement of the parents or, where there is no agreement, to the custodial parent (see *Matter of Paolella v Phillips, supra;* see, also, *Martin v Martin,* 308 NY 136; *Mester v Mester,* 58 Misc 2d 790). Courts should not intervene in such matters absent a showing that "moral, mental and physical conditions are so bad as seriously to affect the health or morals of children" (see *People ex rel. Sisson v Sisson,* 271 NY 285, 287-288; see, also, *Mester v Mester, supra*). Courts have consistently upheld the validity of agreements as to the religious and moral training of a child (*Weinberger v Van Hessen,* 260 NY 294; *Perlstein v Perlstein,* 76 AD2d 49; *Matter of Kananack,* 272 App Div 783), particularly when confirmed by a judgment. While such agreements are not inviolate, before a court will substitute its judgment for that of the parents the burden is on the party seeking to modify or avoid the agreement to demonstrate that enforcement will not be in the best interest of the child (see *Garvar v Faltings,* 54 AD2d 971; *Schwarzman v Schwarzman,* 88 Misc 2d 866). We agree with Special Term that defendant's allegations fail to set forth sufficient evidentiary facts to warrant a hearing on whether enforcement of the parents' agreement will be detrimental to Evan. An inquiry will not be conducted based solely upon a comparison of the reading scores of St. Joseph's and the local public elementary school. A great many other facts would need to be addressed in order to make a determination as to whether enforcement of the parental agreement by prohibiting Evan's enrollment at the parochial school will be detrimental to his health or morals (see *People ex rel. Sisson v Sisson, supra*). Defendant has failed to set forth any facts as to other facets of the programs of the two schools or as to the availability of private nonsectarian schools. She indicates that her conclusion that it is in Evan's best interest to attend St. Joseph's is based upon her 13 years of experience as a public school teacher. She fails, however, to elaborate upon that experience or set forth the facts which form the foundation for her conclusion. These allegations are not sufficient to warrant a hearing. Finally we note that we perceive little substantive difference between the agreement at bar and those agreements which affirmatively direct a particular religious upbringing (*Perlstein v Perlstein, supra; Matter of Kananack, supra*). Each form of agreement reserves to the parents, in the first instance, the opportunity to determine the manner and degree of religious upbringing the child will receive. Bracken, J. P., Brown, Niehoff and Rubin, JJ., concur.