Cohen v Cohen (2019 NY Slip Op 08391)





Cohen v Cohen


2019 NY Slip Op 08391


Decided on November 20, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 20, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
CHERYL E. CHAMBERS
JOHN M. LEVENTHAL
LINDA CHRISTOPHER, JJ.


2018-08623
 (Index No. 3/17)

[*1]Rivka Cohen, respondent, 
v
Tzvi Cohen, appellant.


Morrison & Foerster LLP, New York, NY (Joseph R. Palmore, Ruti Smithline, Lena H. Hughes, and Cecillia X. Xie of counsel), for appellant.
Levine & Associates, P.C., Scarsdale, NY (Michael Levine of counsel), for respondent.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from a judgment of divorce of the Supreme Court, Rockland County (Thomas E. Walsh II, J.), entered July 18, 2018. The judgment of divorce, insofar as appealed from, upon an order of the same court dated May 31, 2018, made after a nonjury trial, and upon an amended order of the same court dated July 17, 2018, awarded the plaintiff sole legal custody of the parties' children, with certain parental access to the defendant; directed the defendant to provide the children with exclusively kosher food and to make all reasonable efforts to ensure that the children's appearance and conduct comply with the Hasidic religious requirements of the plaintiff and of the children's schools while the children are in his physical custody; directed the defendant to pay $1,116.97 per month in child support and 77% of unreimbursed medical expenses, tuition, camp, other child care expenses, and statutory add-ons; permitted the plaintiff to claim the children as dependents on her income tax returns; and failed to direct that the defendant have access to the children's medical, dental, therapeutic, educational, and extracurricular records.
ORDERED that the judgment of divorce is modified, on the law and in the exercise of discretion, (1) by deleting the provision thereof awarding the plaintiff sole legal custody of the parties' children, and substituting therefor a provision awarding the plaintiff sole legal custody of the parties' children, except that the defendant is awarded decision-making authority with respect to the children's mental health treatment; (2) by deleting the provision thereof directing the defendant to pay $1,116.97 per month in child support and 77% of unreimbursed medical expenses, tuition, camp, other child care expenses, and statutory add-ons; (3) by deleting the provision thereof permitting the plaintiff to claim the children as dependents on her income tax returns, and substituting therefor a provision stating that each party is entitled to declare one of the children as a dependent on his or her income tax returns, and directing the plaintiff to execute the appropriate Internal Revenue Service forms; and (4) by adding a provision thereto directing that the defendant shall have access to the children's medical, dental, therapeutic, educational, and extracurricular records, and directing the plaintiff to take all steps necessary to ensure such access; as so modified, the judgment of divorce is affirmed insofar as appealed from, without costs or disbursements, the order dated May 31, 2018, and the amended order dated July 17, 2018, are modified accordingly, and the matter is remitted to the Supreme Court, Rockland County, for a recalculation of the defendant's obligation for child support and unreimbursed medical expenses, tuition, camp, other child care [*2]expenses, and statutory add-ons in accordance herewith and the entry of an appropriate amended judgment of divorce thereafter.
The parties were married on November 17, 2009. There are two children of the marriage, born in 2011 and 2013, respectively. During the early years of the marriage, the parties practiced Satmar Hasidic Judaism. At a certain point, the defendant (hereinafter the father) became non-religious, although he continued to appear religious in his dress and customs. The parties separated in December 2016. In January 2017, the plaintiff (hereinafter the mother) commenced this action for a divorce and ancillary relief. Following a nonjury trial, the Supreme Court awarded the mother sole physical and legal custody of the children, with parental access to the father. The father was directed to provide the children with exclusively kosher food and to make "all reasonable efforts to ensure that the children's appearance and conduct comply with the Hasidic' religious requirements of the [mother] and of the children's schools as they were raised while the children are in [his] physical custody." The court emphasized, however, that it was not mandating any specific mode of dress or religious practices for the father during his periods of parental access. The court also calculated the father's child support obligation, among other determinations. A judgment of divorce was entered on July 18, 2018. The father appeals.
The court's paramount concern when making any custody determination is the best interests of the children (see Eschbach v Eschbach, 56 NY2d 167, 171; Friederwitzer v Friederwitzer, 55 NY2d 89, 94), as determined upon a consideration of the totality of the circumstances (see Eschbach v Eschbach, 56 NY2d at 174). "Factors to be considered include the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (Mohen v Mohen, 53 AD3d 471, 473 [internal quotation marks omitted]). " When presented as an issue, religion may be considered as one of the factors in determining the best interest[s] of a child, although it alone may not be the determinative factor'" (Weisberger v Weisberger, 154 AD3d 41, 52, quoting Aldous v Aldous, 99 AD2d 197, 199). " New York courts will consider religion in a custody dispute when a child has developed actual religious ties to a specific religion and those needs can be served better by one parent than the other'" (Weisberger v Weisberger, 154 AD3d at 52, quoting Aldous v Aldous, 99 AD2d at 199; see Matter of Gribeluk v Gribeluk, 120 AD3d 579, 579).
"Custody determinations turn in large part on assessments of the credibility, character, temperament, and sincerity of the parties, and where a full evidentiary hearing has been held on the child's best interests, the resultant findings will not be lightly set aside on appeal" (Matter of Roldan v Nieves, 76 AD3d 634, 635; see Matter of Gorsky v Kessler, 78 AD3d 834, 835).
The father's contention that he should have been awarded additional parental access is without merit. It is undisputed that the mother was the primary caregiver for the children throughout their lives (see Matter of Recher v Velez, 143 AD3d 828, 829; Matter of Thomas v Tretola, 135 AD3d 867, 867). Maintenance of the status quo, while not decisive, is a positive value entitled to great weight (see Matter of Newton v McFarlane, 174 AD3d 67, 82; Weisberger v Weisberger, 154 AD3d at 54). The father concedes that he wishes for the children to maintain residential stability by continuing to reside with the mother. Further, the children have been raised practicing Hasidic Judaism, and have developed actual ties to the religion, which the mother is better positioned to support (see Matter of Gribeluk v Gribeluk, 120 AD3d at 579). Under these circumstances, there was a sound and substantial basis in the record for the Supreme Court's determination concerning the father's parental access.
The father contends that the mother should not have been awarded sole legal custody due to her alleged alienation of the children from him (see generally E.V. v R.V., 165 AD3d 736, 737). While the mother's actions in limiting the father's parental access with the children after the parties' separation should not be condoned, the totality of the circumstances provides a sound and substantial basis for the Supreme Court's determination as to legal custody in almost all respects. [*3]However, where, as here, joint custody is not possible due to fundamental disagreements concerning the children, it may be appropriate, depending upon the particular circumstances of the case, to award some custodial decision-making authority to the noncustodial parent (see Matter of E.D. v D.T., 152 AD3d 583, 584; Chamberlain v Chamberlain, 24 AD3d 589, 591).
Here, the father was scheduled to join the children for a therapy session to discuss parental access issues when the mother fired the children's therapist. She thereafter retained a new therapist for the children without the father's knowledge. The new therapist did not meet with or contact the father or the previous therapist, but opined at trial that the father should be limited to supervised therapeutic visitation. The Supreme Court found that the mother's reason for changing the therapist on the eve of trial was "suspect," and disregarded the therapist's testimony as biased. We conclude that the mother's actions regarding the children's therapy had the effect of interfering with the father's role and warrant awarding decision-making authority to the father with respect to the children's mental health treatment (see Chamberlain v Chamberlain, 24 AD3d at 592; Trinh Quoc Tran v Tau Minh Tran, 277 AD2d 49, 49).
The father further challenges the Supreme Court's direction that he provide the children with exclusively kosher food and make "all reasonable efforts to ensure that the children's appearance and conduct comply with the Hasidic' religious requirements of the [mother] and of the children's schools as they were raised while the children are in [his] physical custody." The father contends that this provision is unconstitutional and not in the children's best interests, relying primarily on this Court's decision in Weisberger v Weisberger (154 AD3d 41). We disagree. In Weisberger, the Supreme Court enforced a religious upbringing clause in the parties' separation agreement by ordering that, during any period of parental access or during any appearance at the children's schools, the mother "must practice full religious observance in accordance with the Hasidic practices of ultra Orthodoxy," or be relegated to supervised therapeutic visitation (id. at 50 [internal quotation marks omitted]). On appeal, this Court determined that it was "wholly inappropriate to use supervised [parental access] as a tool to compel theplaintiff to comport herself in a particular religious manner" (id. at 53). This Court held that the Supreme Court had run afoul of constitutional limitations by compelling the mother to herself practice a religion, rather than merely directing her to provide the children with a religious upbringing (see id., citing Lee v Weisman, 505 US 577, 587). Here, by contrast, the father was directed to make reasonable efforts to ensure the children's compliance with their religious requirements. The Supreme Court expressly stated that it was not mandating any specific mode of dress or religious practices for the father during his periods of parental access.
New York courts will enforce clauses in custody agreements that provide for a specific religious upbringing for the children where the agreement is in the best interests of the children (see Weisberger v Weisberger, 154 AD3d at 52; Karetny v Karetny, 283 AD2d 250, 251; Matter of Arain v Arain, 209 AD2d 406, 407; Spring v Glawon, 89 AD2d 980, 981). In the absence of a written agreement, the custodial parent may determine the religious training of the children (see Matter of Cook v Rabinowitz, 5 AD3d 594, 594; Matter of De Luca v De Luca, 202 AD2d 580, 581; Jabri v Jabri, 193 AD2d 782, 783). Here, since the mother is the custodial parent entitled to determine the children's religious training, and since the children have consistently adhered to Hasidic practices throughout their lives (cf. Weisberger v Weisberger, 154 AD3d at 46-47), the Supreme Court providently exercised its discretion in directing the father to provide the children with exclusively kosher food and to make all reasonable efforts to ensure the children's compliance with their religious requirements while they are in his physical custody (see Matter of Ervin R. v Phina R., 186 Misc 2d 384, 393 [Fam Ct, Kings County]). We emphasize, as did the Supreme Court, that the defendant is not required, at any time, to himself comply with any religious practices. We further emphasize that the standard is one of reasonable efforts, not perfection, and we urge the parties to work together in the children's best interests to address any issues which may arise prior to seeking judicial intervention.
We agree with the father that the Supreme Court's child support and related expense calculations were not supported by the record (see generally Domestic Relations Law § 240[1-b][b][5]). Specifically, the court calculated the father's gross annual income as $58,056, stating that [*4]such sum was listed on the father's statement of net worth. However, that sum does not appear in the father's statement of net worth. Accordingly, we remit the matter to the Supreme Court, Rockland County, to recalculate the father's obligation for child support and unreimbursed medical expenses, tuition, camp, other child care expenses, and statutory add-ons (see Murphy v Murphy, 166 AD3d 987, 990; Kumar v Chander, 149 AD3d 709, 711). For the purposes of remittal, we note that, "while child support overpayments may not be recovered by reducing future support payments, public policy does not forbid offsetting add-on expenses against an overpayment'" (Matter of Goehringer v Vozza-Nicolosi, 139 AD3d 949, 949-950 [citation omitted], quoting Coull v Rottman, 35 AD3d 198, 201; see Matter of McGovern v McGovern, 148 AD3d 900, 902).
The mother concedes that, "as a wage earner contributing to the support of his children, [the father] is entitled to claim one of the children as a dependent on his income tax returns" (Kim v Schiller, 112 AD3d 671, 676; see Lueker v Lueker, 72 AD3d 655, 658). Further, the mother concedes that the father is entitled to access the children's medical, dental, therapeutic, educational, and extracurricular records (see Fuentes v Board of Educ. of City of N.Y., 12 NY3d 309, 314; Matter of Ruple v Harkenreader, 99 AD3d 1085, 1087). Accordingly, we modify the judgment of divorce so as to include these provisions.
MASTRO, J.P., CHAMBERS, LEVENTHAL and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court